Peahsos, C. J.,
dissenting. It is a matter of regret that thjs Judges of this Court have not been able to agree upon all of the questions to which the general conscription act, February 17th, 1864, has given rise. But the ground wás untrodden. There were no cases to guide us, and perfect concurrence of opinion was hardly to be expected.
So far as the opinion delivered by.my brother Battle is based on the doctrine of necessity, “ which leñólos no law,” and the .principle that, in respect to individuals, the war power of Congress is unlimited — those question» being settled by Walton vs. Gatlin, it is my duty to conform to that decision.
*120 That case did not present the question, whether the war power of Congress is also unlimited in respect to the States, which is “the point" in this case/
Johnson vs. Mallett at the extra term settles the principle that in respect to the-States the war power of Congress is limited, and is subject to their resárved right in regard to their officers ; and on that ground it is decided that a State officer is not liable to conscription.
It is conceded that this right cannot be impaired by the action of Congress, and the difference of opinion is as to the •extent of the right. Is.it confined to the keeping in offices persons who may be in office at a given time P or does it extend to the filling of vacancies which from time to time may occur? That is the question.
The ground on which this right is based is, that the existence of a State depends on having such officers as are necessary to administer its government and laws. Therefore it cannot be intended, that in creating the government of the Confederate States, it was the design of the States to confer a power,, by which their existence would be made to depend on the will, of their creature.
This is a broad ground; and it embfaees as well the right to fill vacancies, as the right to keep in office, persons who may be in office at a given time ; for the former right is equally as necessary to the continued existence of a State as the latter : andino State cán have aa independent existence without both. In fact, they are but parts of ene and the same right. This being so, it follows that neither part can be impaired by the action of Congress : and it must be conceded that the part in relation to filling vacancies is decidedly impaired, if it be restricted to the election or appointment of men who are *121 ©Ter conscript age, exempt as a “ matter of grace ” on the part of Congress.
Both ’being necessary and covered by the same principle, I can-see no ground to draw a dividing line between the two parts, except to “ split the difference ” between the claim of the Confederate States and the reserved rights of the States, because of a “ present necessity ” on the idea of “ letting the future take care of itself.”
To meet this difficulty a distinction is suggested between the offices named in the Constitution, and offices created by the Legislature. This suggestion does hot meet the difficulty. It was not to be expected that an instrument like the Constitution would enumerate all of the necessary State offices, and, therefore, it confers on the Legislature power to create and, fill all offiees which, in its wisdom, should., be deemed necessary ; and there can be no substantial difference between offices named in the Constitution and offices created' under its authority, both . classes of-offices being necessary for the proper administration of the government and laws of .a State — in other words, to preserve its existence ; and the power conferred on Congress is subject to the" rights of the State in regard to both classes. Indeed, it is decided by Johnson vs. Mallett, supra, that the part of the‘right in relation to keeping persons in office, embraces offices of the latter class as well as offices of the former class; so the only question (t open” is as to that part of the right in relation to filling vacancies. This suggestion, so far from disproving' that paft of the right, yields a part of .the question and makes it more difficult to maintain the other... To make the subject clear, take an illustration from the operations of war, that being the order of the’ day : The main work in front is carried by Johnson vs. Mallett; the work on *122 the riglit is j ielded by this suggestion, whereby the work on the left becomes so exposed in front and flank as to be no longer tenable.
Again it is suggested — “ The two governments should act in harmony, and to do so, the government which first •exercises a power ought to be allowed to retain all citizens who have been taken into its service." No ©nefeels a deeper conviction than I doy that in order to preserve harmony, each government should be allowed the ftillest exefcise of its rightful powers. But the suggestion under consideration interferes with ' the exercise of a rightful power of the State, arid assumes the powers of the two governments in regard to this subject to be concurrent. This is a departure from the principle settled in Johnson vs. Mallett, to-wit :• That che war power of the Confederate States is subservient to the ’reserved right of the States in regard to their officers, in my opinion the proper way to preserve harmony and allow “ each to move in its appropriate sphere,’’ is to consider Congress as having exercised its powers of conscription, subject to the preferred right of the States, so that when it becomes necessary for a State to exercise the' preferred right, the prior action of Congress shall give way and allow the election of a State officer to fill a vacancy, to have the effect ipso facto of terminating the conscription' of the person elected ; in the same way and on the same ground that one in the militia or home guard service of a State, as soon as he is conscripted, passes' into the service of the Confederate States, because the war power of the State is secondary, and the .Confederate States have the preferred right under their war powér. (See my opinion, Wood vs. Bradshaw, at this term.) This principle may be illustrated .by many analogies of tire law. One will suffice : A sister takes as *123 heir of her brother — afterwards another brother is bora. At the common law the estate of the* sister terminates,- and gives .place to the right of the brother, under the rule ' — “ males are preferred to females.” '
The other point as to the. meaning 'of .the act, section 10, clause 2, is of minor importance. But I am so unfortunate as to differ- in respect to that also. I can see nothing in this clause to coniine its operation to persons who, at the date of the act, filled the offices of Yiee President, members of Congress, members of the Legislature and other Confederate and State offices, and to exelude from its operation all persons who may afterwards be elected to these offiees, if they are at the time of their election in the military service of the Confederate States. The conscription, by the act, February, 1864, is general, and applies as well to persons then in service, to keep, them in during the war, as to persons not then in service. The exemption must have as broad an application as the conscription, unless there be words of restriction. _ The only words used are, “shall be exempted,” which means “ shall be relieved ” from the service imposed by the conscription. Such being the plain meaning of .the words used, it must be taken that' Congress so intended, and •there is ao room for construction.
If words at all ambiguous had been used, the' rule of construction, that the Court may derive aid from. other statutes in pari materia, or from the preamble to a former statute,' made for the special purpose of justifying an act, which, to many, seemed to be in violation- of a contract, might have been applicable ; and, on - the other hand, it might have been cejevant to have made the suggestions : that the, exemption in regard to State officers was meant to. extend to persons in the army, elected to fill vaeancies, *124 in deference to the right claimed by the States ; that it is unreasonable to suppose it was intended to confine the Statés, in filling all vacancies that might thereafter occur, to the election or appointment of men over conscript age; and that in regard to members of Congress and other Confederate officers, it would be indecent to suppose that the members in at the date of the act, intended to exclude fr©m competition with. themselves, at future elections for Congress,- all of their fellow-citizens* except men over the. age of fifty years ( ' r
Ih my opinion there is no error in the judgment at chambers.